**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| BLAKE COOLEY, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| FIRST DATA MERCHANT SERVICES, LLC, and JOHN DOE CORPORATION D/B/A ONE CONNECT PROCESSING, | : : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : : | |
| _____/ | : | |

**Preliminary Statement**

1.     Plaintiff Blake Cooley ("Plaintiff" or "Mr. Cooley") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     Mr. Cooley alleges that First Data Merchant Services, LLC ("First Data") commissioned automated and pre-recorded telemarketing calls to Mr. Cooley and other putative class members without their prior express written consent.

3.     These calls were made pursuant to an arrangement between First Data and John Doe Corporation d/b/a One Connect Processing ("One Connect Processing"), a telemarketing vendor for First Data.

4.     Mr. Cooley and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Cooley brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of First Data.

5.     A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.     Plaintiff Blake Cooley currently resides in Nevada.

7.     Defendant First Data Merchant Services, LLC is a Florida limited liability company with its principal place of business at 5565 Glenridge Connector NE, Suite 2000 in Atlanta, GA 30342 with a registered agent of Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, GA  30092.

8.     Defendant John Doe Corporation d/b/a One Connect Processing is a company that operates the website https://oneconnectprocessing.com/.  One Connect Processing engaged in nationwide automated telemarketing on behalf of First Data as it did with the Plaintiff, including in this District, and entered into a contract with First Data in this District.

**Jurisdiction & Venue**

9.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

10.    The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.    The Court has personal jurisdiction over First Data because of their registration and principal place of business in the state of Georgia.

12.    The Court has personal jurisdiction over One Connect Processing because they engaged in nationwide telemarketing conduct, including into this District. Furthermore, they both entered into a contractual relationship with First Data in this District.

13.    Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned from this District.

### TCPA Background

14.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

19.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

20.    "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket

No. 02-278, at 2 (2016),

https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

21.    In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

22.    *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

23.    Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press

Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

## Factual Allegations

Call to Mr. Cooley

24. Plaintiff Cooley is a "person" as defined by 47 U.S.C. § 153(39).

25. Mr. Cooley's telephone number, 714-330-XXXX, is registered to a cellular telephone service.

26. Mr. Cooley has also placed this telephone number on the National Do Not Call Registry.

27. Mr. Cooley was called by One Connect on December 26, 2018.

28. When Mr. Cooley answered the call, there was a distinctive click and a pause.

29. This click and pause is a telltale sign of a predictive dialer.

30. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

31.    As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

32.    A predictive dialer is an ATDS as that term is defined by the TCPA.

33.    Because of the predictive dialer, Mr. Cooley said "hello" several times and then a pre-recorded message was played.

34.    The use of a pre-recorded message is also a sign that an ATDS was used, as it would be illogical to hand-dial a call only to play a pre-recorded message.

35.    Eventually, "Ashley W." from One Connect spoke with Mr. Cooley and offered First Data services.

36.    "Ashley W." then sent an e-mail to Mr. Cooley that included an application for First Data services.

37.    Plaintiff is not a customer of any of the Defendants and has not consented to receive telemarketing calls prior to the receipt of these calls.

38.    Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients

because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

### First Data's Liability for One Connect Processing's Conduct

39.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

41.    In fact, the Federal Communication Commission has instructed that sellers such as First Data may not avoid liability by outsourcing telemarketing to third parties, such as One Connect Processing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were

judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

43.     First Data is liable for the One Connect Processing telemarketing calls.

44.     First, First Data hired One Connect Processing to originate new business using automated telemarketing calls.

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

45.     Furthermore, First Data could have restricted One Connect Processing, and the third parties it worked with, from using automated telemarketing, but it didn't.

46.     First Data knew (or reasonably should have known) that One Connect Processing was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

47.     Additionally, One Connect had the ability to bind First Data in contract, as One Connect Processing attempted to do with the Plaintiff, a hallmark sign of agency.

48.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

49.     As authorized by Rule 23 of the Federal Rules of Civil Procedure,

Plaintiff brings this action on behalf of a class of all other persons or entities

similarly situated throughout the United States.

50.     The Class of persons Plaintiff proposes to represent is tentatively

defined as:

> All persons within the United States to whom: (a) First Data and/or a
> third party acting on their behalf, made one or more non-emergency
> telephone calls; (b) that could have promoted First Data's products or
> services; (c) to their cellular telephone number; (d) using an automatic
> telephone dialing system or an artificial or prerecorded voice; and (e) at
> any time in the period that begins four years before the date of the filing
> of this Complaint to trial.

51.     Excluded from the Class are counsel, the Defendants, and any entities

in which the Defendants have a controlling interest, the Defendants' agents and

employees, any judge to whom this action is assigned, and any member of such

judge's staff and immediate family.

52.     The Class as defined above is identifiable through phone records and

phone number databases.

53.     The potential Class's members number at least in the thousands.

Individual joinder of these persons is impracticable.

54.     Plaintiff is a member of the Class.

55.    There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a.    Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

b.    Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

c.    Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

56.    Plaintiff's claims are typical of the claims of class members.

57.    Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

14

59.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

60.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Call provisions

61.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.    The Defendants violated the TCPA by (a) initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

63.    The Defendants' violations were willful and/or knowing.

64.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting First Data and/or its affiliates, agents, and/or other persons or entities acting on First Data's behalf from making calls, except for

emergency purposes, to any cellular telephone number using an artificial or prerecorded voice in the future.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.      Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or an automated voice;

C.      Because of Defendants' violations of the TCPA, Plaintiff Cooley seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

D.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.      Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

## <u>CERTIFICATION OF COUNSEL</u>

I hereby certify in accordance with U.S.D.C. N.D. Ga. Local Rule

7.1D that the foregoing CLASS ACTION COMPLAINT has been prepared using

Times New Roman, 14-point font, as required in U.S.D.C. N.D. Ga. Local Rule

5.1C.


Dated: March 14, 2019          BLAKE COOLEY, on behalf of himself
                               and others similarly situated,

                               By:

                               **THE KOVAL FIRM, LLC**

                               <u>*/s/ Steven H. Koval*</u>
                               Steven H. Koval
                               Georgia Bar No. 428905
                               3575 Piedmont Road
                               Building 15, Suite 120
                               Atlanta, GA  30305
                               Telephone:  (404) 513-6651
                               Facsimile: (404) 549-4654
                               shkoval@aol.com